UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CHILTON FINANCIAL SERVICES, L.P., And CAROL ANN CHILTON, as REPRESENTATIVE OF THE ESTATE OF TERRY CHILTON, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 1:15-CV-460 |
| v. | § § | |
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, | § § § | |
| DEFENDANT | § § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Comes Now, Carol Ann Chilton, as Representative of the Estate of Terry Wayne Chilton ("Terry Chilton" or "Chilton"), and files this Second Amended Petition against Defendant St. Paul Fire and Marine Insurance Company ("Defendant" or "St. Paul") and in support thereof will show the court as follows:

### I.     SUMMARY OF CLAIM

1.1     This is an insurance coverage dispute arising out of St. Paul's refusal to indemnify a $1.3M FINRA arbitration award entered against Terry Wayne Chilton and Chilton Financial Services, LP, under a Life & Health Insurance Agents' Professional Liability. Terry Chilton took his own life on January 18, 2016 as a direct result of the anguish caused by St. Paul's wrongful refusal to pay the award, and the imminent threat of losing his securities license and a career that spanned over more than forty years. Chilton Financial Services, L.P. was dissolved by operation of law upon his death and is no longer a party to this cause.

1.2 The arbitration involved claims by Chilton's former clients—the McCorquodales—over variable annuities sold by Chilton, which the McCorquodales alleged were unsuitable for their financial condition. Although it had ample opportunity to settle the case within policy limits, St. Paul refused on the erroneous basis that a policy exclusion limited to violations of state and/or federal securities law applied to the McCorquodales, despite the fact that the McCorquodales also sought to hold Chilton responsible for negligent misrepresentation, breach of fiduciary duty, and insurance code claims—claims a professional liability policy like St. Paul's is specifically intended to cover. Later, the McCorquodales dismissed their state-law securities claims, meaning that the award entered against Chilton could not have been based upon securities violations as a matter of law.

1.3 Nevertheless, St. Paul maintained that the securities exclusion applied to the award and then later maintained that a market fluctuation exclusion, completely inapplicable to the sale of annuities, also negated coverage under the policy. St. Paul also erroneously maintained that Terry Chilton had knowledge of the McCorquodales' claim prior to the inception of the policy simply because Mr. McCorquodale allegedly sent Mr. Chilton a short, handwritten note expressing concern over his investment portfolio. Because Chilton did not have the funds to satisfy the arbitration award St. Paul had refused to pay, he remained in continual and imminent threat of financial devastation and the loss of his securities licenses under applicable FINRA rules. The weight of this burden, and the sense of impending doom, cost Terry Chilton his life. Carol Ann Chilton, Terry's estate, now seeks to pursue his cause.

## II.  PARTIES

2.1 Plaintiff Carol Ann Chilton is an individual citizen of the state of Texas and the Representative of the Estate of Terry Wayne Chilton, now deceased.

2.2     Defendant St. Paul Fire and Marine Insurance Company is a foreign insurance carrier admitted by the Texas Department of Insurance to issue property and casualty insurance policies in the state of Texas. St. Paul has entered and appeared herein.

### III.    JURISDICTION

3.1     This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter involves citizens of different states, and the amount in controversy, exclusive of interest and attorneys' fees, exceeds $75,000.

### IV.    FACTS

4.1     During his lifetime, Terry Chilton was a licensed broker-dealer with more than 45 years of experience as a financial planner. Mr. Chilton was, at the time of his death, the general partner of Chilton Financial Services, L.P.

4.2     Terry Chilton and Chilton Financial were named as defendants in a civil lawsuit (the "Lawsuit") and respondents in a FINRA arbitration proceeding (the "FINRA Proceeding")[1] filed by Rex, Ann, and Knox McCorquodale, former clients of Terry Chilton. The McCorquodales made identical allegations in both the FINRA Proceeding and the Lawsuit. The Lawsuit was later stayed, and the claims were heard in the FINRA Proceeding.

4.3     The McCorquodales alleged that from 2007-2013, Chilton improperly invested almost the entirety of their liquid net worth, a total of more than $6M, into variable annuities that were unsuitable for their age and financial condition. The McCorquodales allege that when they made withdrawals against their annuity accounts, they suffered penalties for early withdrawal and taxable events. The McCorquodales also accused Chilton of "churning" their portfolio by selling them additional annuities through different broker-dealers, causing them to suffer

---

[1] *Rex McCorquodale, Ann McCorquodale, and Knox McCorquodale v. Terry Wayne Chilton, et al.*, pending as Case No. 13-02390 before the Financial Industry Regulatory authority (the "FINRA Proceeding"), and as Case No. D-130258-C, in the 260th District Court of Orange County, Texas (the "Lawsuit").

additional unnecessary surrender charges.

4.4     The McCorquodales further alleged that they requestedTerry Chilton invest their money in a less aggressive allocation, but were advised it was not possible. The McCorquodales alleged Chilton should have invested (or advised them to invest) their money into a less aggressive portfolio, such as individual securities and mutual funds.

4.5     The McCorquodales sought in excess of $2M in damages for fraud, breach of fiduciary duty, negligence, gross negligence, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act, violations of the Texas Securities Act, breach of contract and violations of the Texas Insurance Code. Later, the McCorquodales dropped their securities claims, and sought an award based on the remaining claims.

4.6     Chilton was insured under a Life & Health Insurance Agents' Professional Liability policy issued by St. Paul Company, number ZPL11P0498213N1, effective 07/15/2013–07/15/2014 (the "Policy").

4.7     The Policy provides, or in this case, provided coverage to Chilton for Damages and Defense Expenses for any Claim first made during the Policy Period caused by a Wrongful Act committed on or after any applicable Retroactive Date. The term "Wrongful Act" is defined in the Policy to mean any: "actual or alleged act, error, omission or Personal Injury Offense in the rendering of, or failure to render Professional Services."

4.8     The term "Professional Services" is defined in the Policy to mean "those services performed for others in the capacities set forth in ITEM 4 of the Declarations." ITEM 4 of the Declarations defines those services to be:

COVERAGE INCLUDED AS OF THE INCEPTION DATE IN ITEM 2:

Insurance Professionals Liability Coverage
Services Performed for Others:

    Life, Health and Accident Insurance Agent or Broker

    Sale and Servicing of Mutual Funds

4.9    The Policy Retroactive Date is 09/01/1996. Importantly, however, the Policy contains an Endorsement (PT C-2066 Ed. 07-10) excluding coverage for any Claim arising out of a Wrongful Act in the rendering or failure to render "Specified Professional Services" prior to the "Specified Professional Services Wrongful Act Date." The Endorsement defines the "Specified Professional Services" to be "Mutual Funds," and the "Specified Professional Services Wrongful Act Date" to be 07/15/2013.

4.10    The term "Damages" is defined in the Policy to mean "money that an Insured is legally obligated to pay as settlements, judgments, and compensatory damages; punitive or exemplary damages if insurable under the applicable law most favorable to the insurability of punitive or exemplary damages; or pre-judgment or post-judgment interest."

4.11    St. Paul defended the FINRA Proceeding pursuant to a reservation of rights dated November 13, 2013. In it, St. Paul asserted that the McCorquodales' claims were excluded by a contract exclusion (for liability assumed by contract); a Policy exclusion for warranties or guaranties as to the performance of investments; a Policy exclusion for the disgorgement of fees and commissions; and a Policy exclusion for criminal, fraudulent, dishonest or malicious conduct committed by the Insured.

4.12    The FINRA Proceeding was mediated on February 11, 2015. On February 26, 2015, days after the mediation, St. Paul dropped a bomb, asserting—for the first time in a second reservation of rights—that the McCorquodales' claims were governed by a Policy exclusion for

claims "based upon or arising out of any violation of the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, or any state Blue Sky law, or any similar state or federal statute or law, or any regulation or order issued pursuant to any of the foregoing."

4.13   At the mediation, the McCorquodales demanded $875,000 (or the remaining limits of Chilton's liability insurance) to settle their multi-million dollar claims, in exchange for an unconditional release. Against the advice of Chilton's attorney, Travelers offered only $50,000—a fraction of Chilton's potential exposure.

4.14   St. Paul maintained, despite repeated demands by Chilton the suit be settled, that the claims were barred by what it deemed to be the "absolute Securities exclusion," regardless of the facts that 1) the McCorquodales did not allege Chilton violated any federal securities law, and 2) variable annuities, by definition, are not "securities" under the Texas Securities Act.

4.15   The arbitration was conducted March 23, 2015 through March 28, 2015. During the proceedings, the McCorquodales dropped their securities claims, and proceeded on their claims for negligence, breach of fiduciary duty, misrepresentation, and insurance code violation.

4.16   On May 15, 2015, the FINRA arbitrators issued their ruling, awarding the McCorquodales in excess of $1.3M in damages:

> After considering the pleadings, the testimony, the evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1. Respondents Terry Wayne Chilton, Chilton Financial Services, Inc., and Chilton Financial Services, L.P. are jointly and severally liable for and shall pay to Claimants, Rex McCorquodale, Ann McCorquodale, and Knox McCorquodale, the sum of $1,142,000.00 in compensatory damages;
>
> 2. Respondents Terry Wayne Chilton, Chilton Financial Services, Inc., and Chilton Financial Services, L.P. are jointly and severally liable for and shall pay to Claimants, Rex McCorquodale, Ann McCorquodale,

    and Knox McCorquodale, the sum of $30,000.00 for expert witness costs;

  3. Respondents Terry Wayne Chilton, Chilton Financial Services, Inc., and Chilton Financial Services, L.P. are jointly and severally liable for and shall pay to Claimants, Rex McCorquodale, Ann McCorquodale, and Knox McCorquodale, the sum of $250.00 in costs as reimbursement of the non-refundable portion of the filing fee; and

  4. Any relief not specifically enumerated, including punitive damages and attorneys' fees, is hereby denied with prejudice.

  4.17 In addition to the award, Chilton was also ordered to pay $250.00 in filing fees and $14,000 in fees related to the arbitration proceedings.

  4.18 On May 19, 2015, Chilton demanded that St. Paul pay the entirety of the award. St. Paul refused.

  4.19 FINRA Rule 9554 provides that FINRA may suspend the license of any broker-dealer who fails to pay an arbitration award within thirty days. The only defenses that may be asserted to a Rule 9554 proceeding are 1) payment; 2) a fully executed settlement under which the member's obligations are current; 3) the filing of a motion to vacate; or 4) where the member files for bankruptcy protection.

  4.20 On June 16, 2015, knowing what was about to occur, and facing irreparable harm and financial ruin, Chilton again demanded that St. Paul pay the award. Sure enough, by letter dated June 30, 2015, FINRA notified Chilton that his license would be suspended on July 21, 2015 unless he could show that one of the Rule 9554 defenses had been satisfied.

  4.21 Instead, St. Paul agreed to pay for Chilton's defense counsel to file a motion seeking to vacate the award, pursuant to the terms of the Policy, but refused to advise Chilton one way or the other what it intended to do if the motion to vacate was denied. As his anxiety continued to mount, Terry Chilton's physical and mental health began to rapidly deteriorate.

4.22    The McCorquodales then filed a motion to confirm the arbitration award in the Lawsuit. In the same Lawsuit, Chilton filed a motion to vacate the award. Chilton's motion was heard on September 3, 2015, denied on September 6, 2015, and the FINRA award was confirmed as a judgment. Although it had ample opportunity to do so, St. Paul refused to pay the award.

4.23    Instead, knowing that Chilton would face expedited suspension proceedings immediately after the award was confirmed, St. Paul waited until September 11, 2015, almost four months later, to deny coverage again, this time asserting yet another baseless reason for its erroneous refusal to honor its contractual duties under the Policy.

4.24    In its letter of September 11, 2015, St. Paul asserted, post-judgment, and <u>for the first time</u>, that the McCorquodales' claims were barred by the terms of a Mutual Funds Coverage Endorsement applicable to the sale of mutual funds, (if covered by ITEM 4 of the Declarations). Although it is undisputed that the variable annuities made the basis of the McCorquodales' claims are not mutual funds, St. Paul now maintains that the Mutual Funds Coverage Endorsement, which excludes coverage for "fluctuation in the market value of any security," applies. Thereafter, Chilton filed this suit.

4.25    On September 17, 2015, FINRA notified Chilton that his license would be suspended on October 6, 2015 unless he was able to show that the award had been paid. With St. Paul still refusing to pay, Chilton's attorneys were forced to frantically delay the entry of the final judgment by pursuing post-judgment motions—tantamount for Terry Chilton being led to the gallows a second time, only to receive a last minute reprieve. The exercise was undertaken again in December of 2015, until a final FINRA hearing was set to occur on February 6, 2016. Still, St. Paul refused to pay the award.

4.26    By late December of 2015, it was clear that Terry Chilton had run out of time and

options to delay the inevitable. On January 18, 2016, Terry Wayne Chilton committed suicide, leaving behind a family devastated by the loss. Terry Chilton also left behind a note, in which he clearly explains the unending mental and physical pain caused by St. Paul's refusal to honor the terms of the Policy he thought would protect him from financial and professional ruin.

## V. FIRST CAUSE OF ACTION – BREACH OF CONTRACT

5.1  Chilton incorporates the allegations made hereinabove for all purposes as though more fully set forth in detail.

5.2  The award is covered under the terms of the Policy issued by St. Paul. St. Paul breached its duties under the Policy by refusing to settle the McCorquodales' claims within Policy limits, and by refusing to pay the judgment entered against Chilton.

5.3  The securities exclusion does not apply because the award is not based on the violation by Chilton of any federal securities laws; the McCorquodales abandoned their claims under the Texas Securities Act before the award was entered; and variable annuities, such as those sold to the McCorquodales, are not considered securities under the Texas Securities Act.

5.4  The market fluctuation exclusion does not apply because the exclusion contained in the Mutual Funds Coverage Endorsement applies only to the sale of mutual funds. Variable annuities are neither mutual funds nor securities.

5.5  St. Paul is estopped from relying upon either the securities exclusion or the market fluctuation exclusion in any event because it undertook Chilton's defense without properly raising the exclusions, thereby prejudicing both Chilton's right to independent counsel and his ability to adequately prepare for the immediate suspension of his license following the issuance of the award.

## VI. SECOND CAUSE OF ACTION – STOWERS LIABILITY

6.1     Chilton incorporates the allegations made hereinabove for all purposes as though more fully set forth in detail.

6.2     During the proceedings, the McCorquodales presented a demand for settlement within the limits of the Policy in exchange for a complete and unconditional release of their claims.

6.3     St. Paul not only refused the demand, it failed to pursue or explore any meaningful opportunity for settlement, knowing full well the damage and harm that would befall Chilton in the event Chilton was exposed to a judgment in excess of Policy limits that Chilton could not pay.

6.4     In so doing, St. Paul violated the duties owed to Chilton under *G. A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W. 2d 544, 547 (Tex. Comm. App. 1929, holding approved). St. Paul is therefore liable to Terry Chilton for the full amount of the arbitration award, together with pre-judgment interest, and post-judgment interest accrued thereon.

## VII. THIRD CAUSE OF ACTION – VIOLATIONS OF THE TEXAS INSURANCE CODE

7.1     Chilton incorporates the allegations made hereinabove for all purposes as though more fully set forth in detail.

7.2     St. Paul's conduct, as more fully described above, constitutes a violation of the Texas Insurance Code, § 541.060 et al, or the Unfair Settlement Practices Act by engaging in one or more of the following prohibited acts:

   a. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear. TEX. INS. CODE § 541.060 (a)(2)(A);

   b. Failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's

      denial of a claim or offer of a compromise settlement of a claim. TEX. INS. CODE § 541.060(a)(3);

   c. Failing within a reasonable time to affirm or deny coverage of a claim to a policyholder. TEX. INS. CODE § 541.060(a)(4)(A); and,

   d. Refusing to pay a claim without conducting a reasonable investigation with respect to the claim. TEX. INS. CODE § 541.060(a)(7).

7.3    Defendant's conduct was done knowingly within the meaning of Tex. Ins. Code § 541.002(1). As a result of its actions, Defendant is subject to statutory penalties, including treble damages, punitive damages and attorney's fees pursuant to Tex. Ins. Code § 541.152(b).

### VIII. THIRD CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

8.1    Chilton incorporates the allegations made hereinabove for all purposes as though more fully set forth in detail.

8.2    St. Paul knowingly and/or recklessly refused first to settle the McCorquodales' claims within Policy limits, and later knowingly and/or recklessly refused to pay the arbitration award entered against Chilton in the FINRA Proceeding. Subsequently, St. Paul knowingly and/or recklessly took Terry Chilton on an emotional rollercoaster ride, bringing him repeatedly to the brink of financial and professional disaster, whilst Chilton's attorney's worked frantically to prevent Terry Chilton from losing his securities license and livelihood.

8.3    St. Paul's conduct was extreme and outrageous in that St. Paul had repeated opportunities to settle the McCorquodales' claims and/or pay the arbitration award, but nevertheless continued to deny coverage while Terry Chilton was repeatedly and relentlessly threatened with the loss of his license, the loss of his livelihood, the loss of his reputation, and the loss of esteem from his family, friends, business associates, and members of the community at large.

8.4    The acts and omissions described caused Terry Chilton to suffer emotional

distress and anguish to such a degree that on January 18, 2016, while disaster was looming on the horizon, he took his own life. Terry Chilton left behind a family devastated in the wake of his demise, and a note detailing the massive and extreme emotional distress from which he suffered at the hands of St. Paul.

## IX.   DAMAGES

9.1   Chilton incorporates the allegations made hereinabove for all purposes as though more fully set forth in detail.

9.2   As a result of St. Paul's conduct, Terry Chilton suffered direct economic loss and damage, and consequential damage that will now be borne by his estate.

9.3   Prior to his death, Terry Chilton suffered injury and harm to his reputation, and severe emotional distress, more fully described above.

9.4   Terry Chilton was also forced, as a result of St. Paul's erroneous denial, to retain the services of the undersigned counsel.

9.5   Terry Chilton is entitled to recover the damages claimed, in addition to treble damages, punitive damages, and attorneys' fees pursuant to the Texas Insurance Code and the Texas Civil Practice & Remedies Code. See TEX. CIV. PRAC. & REM. CODE § 38.001(8) (statutory basis for recovery of attorneys' fees in breach of contract case); and TEX. INS. CODE § 541.152(a)(1) (prevailing plaintiff may recover actual damages, plus court costs and reasonable and necessary attorneys' fees).

9.6   Terry Chilton is also entitled to recover exemplary damages for St. Paul's conduct that was committed knowingly, recklessly, and/or as a product of gross negligence.

## X.   JURY DEMAND

10.1   Plaintiff demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Carol Ann Chilton, as Representative of the Estate of Terry Wayne Chilton respectfully requests that the Court award Plaintiff all relief requested above, along with treble damages, punitive damages, attorneys' fees, costs of court, pre-judgment interest and post-judgment interest, and such other and further relief, in law and equity, general and specific, to which Plaintiff may be justly entitled.

Respectfully submitted,

By: */s/ Tarron L. Gartner*
Tarron L. Gartner
State Bar No. 18686175
tarron@amystewartlaw.com
AMY STEWART PC
5307 E. Mockingbird Lane, Suite 425
Dallas, Texas 75206
(214) 233-7076 – telephone
(214) 975-2806 – facsimile

**ATTORNEYS FOR PLAINTIFFS
CHILTON FINANCIAL SERVICES L.P.
and CAROL ANN CHILTON, AS
REPRESENTATIVE OF THE ESTATE OF
TERRY WAYNE CHILTON**

## CERTIFICATE OF SERVICE

I do hereby certify that on May 10, 2016 a true and correct copy of the foregoing was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case.

By: */s/ Tarron L. Gartner*
Tarron L. Gartner

4835-7360-4401, v. 1